**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROQUE DE LA FUENTE, | : | 1:16-cv-1696 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| PEDRO A. CORTES, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### September 14, 2016

Presently pending before the Court is a Motion to Dismiss (Doc. 10) filed by

Defendants Pedro A. Cortes and Jonathan Marks (collectively, "Defendants").  The

Motion is filed in response to Plaintiff Roque de la Fuente's Amended Complaint

for Emergency Mandamus, Injunctive and Declaratory Relief (Doc. 4), filed on

August 18, 2016.  Due to the expedited nature of this proceeding and the close

relation of the issues raised with matters of Pennsylvania election law, the Court

requested that the parties brief the threshold issue of abstention on an accelerated

schedule.  We have now received a full complement of briefings (Docs. 11, 12, and

13) in response to the Motion and the Motion is accordingly ripe for the Court's

review.  For the following reasons, the Court shall abstain and shall not proceed to

the merits of Plaintiff's claims.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Roque "Rocky" De la Fuente ("Plaintiff") is an independent candidate for the Office of the President of the United States.  (Doc. 4, ¶ 19). Plaintiff seeks a position as an independent political candidate on the election ballot in the Commonwealth of Pennsylvania for the 2016 Presidential Election this coming November.  However, Plaintiff is also a registered and enrolled member of the Florida Democratic Party, and previously ran in the Democratic Primary as a candidate for the presidential nomination earlier this year.  (*Id*., ¶¶ 20-21).  Although Plaintiff participated in the Pennsylvania Democratic Primary, he did not succeed in procuring the nomination and finished third out of three candidates.  (Doc. 11, p. 2).

On August 1, 2016, Plaintiff's agents filed nomination papers with Defendants' offices, seeking to procure for Plaintiff a position on the presidential ballot as an independent candidate.  (Doc. 4, ¶ 23).  The papers contained over 5,000 valid signatures of qualified electors residing within Pennsylvania.  (*Id*.). Plaintiff's nomination papers were subsequently rejected, with Defendants "citing the fact that [P]laintiff had appeared on the Commonwealth's 2016 Democratic presidential preference primary electing delegates to the Democratic National Convention and extending enforcement of 25 P.S. § 2911(e)(5) to primary elections for the election of internal party offices."  (*Id*., ¶ 24).  Plaintiff also avers

that Defendants may have rejected Plaintiff's papers on grounds provided by 25 P.S. §§ 2911(e)(6) and § 2911.1.  (*Id.*, ¶ 25).[1]  The rejection notification that Defendants issued advised Plaintiff that "the candidate may file a mandamus action in Commonwealth Court asking the court to order the Secretary of the Commonwealth to accept the nomination paper."  (Doc. 11, p. 5).

As noted above, on August 18, 2016, Plaintiff filed an Amended Complaint with this Court, arguing that the Pennsylvania election laws as interpreted by Defendants unconstitutionally impose additional qualifications on candidates for federal office in violation of the Qualification Clause of Article II and the First and Fourteenth Amendments of the United States Constitution.  (Doc. 4, ¶¶ 51, 53-54).  Plaintiff also argues that Defendants lack statutory authority under the express terms of 25 P.S. § 2911(e)(5) to disqualify Plaintiff from running as an independent, either because Plaintiff also ran in the 2016 Democratic Presidential Primary, or because Plaintiff is a registered member of the Florida Democratic Party.  (*Id.*, ¶ 44, 45).  To remedy these alleged violations, Plaintiff requests emergency mandamus relief ordering Defendants to accept Plaintiff's nomination

---

[1]      In their brief in support of the instant Motion to Dismiss, Defendants confirm that the formal rejection decision notified Plaintiff that his nomination papers were rejected because Plaintiff's name was "already presented by nomination petitions in the General Primary, which precludes the candidate from seeking the nomination of a political body pursuant to 25 P.S. Section 2911(e)(5)." (Doc. 11, p. 4).  Section 2911(e)(5), also known as the "Sore Loser Rule" or "Sore Loser Provision" shall be discussed in more detail below.

Defendants also note that Plaintiff's papers were rejected because "the Candidate's Affidavit was incomplete as the field for the title of the office the candidate was filing to run for was left blank," in violation of § 2911(e)(2).  (Doc. 11, p. 4).

papers; injunctive relief enjoining Defendants from enforcing 25 P.S. §§ 2911(e)(5) and (6) and § 2911.1; and a declaration that 25 P.S. §§ 2911(e)(5) and (6) and/or § 2911.1 are unconstitutional as applied to independent and political body candidates for President and Vice President of the United States.  (*Id.*, ¶ 60).

On August 25, 2016, Defendants filed a Motion to Dismiss, emphasizing that Plaintiff's claims turn on Plaintiff's argument that Defendants have wrongly interpreted the applicable Pennsylvania election laws.  Defendants argue that Plaintiff's claims raise an unsettled issue of state law more rightly addressed by the Commonwealth Court, and as such this Court's abstention under the *Pullman* Doctrine is appropriate.  As noted above and addressed more thoroughly in our analysis below, we agree and shall therefore abstain from the above-captioned matter on the grounds articulated by the *Pullman* Doctrine.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) contends that the complaint has failed to assert a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  In considering the motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To resolve the motion, a court generally should consider only the allegations in the complaint, as well as "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation and internal quotation marks omitted).

In general, a Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration omitted)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To survive a motion to dismiss, "a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate that the defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678.  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 564, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* at 680. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

## III.   ANALYSIS

We begin this discussion with a brief overview of Pennsylvania election law.

Pennsylvania law distinguishes between 'political parties,' also referred to as major

political parties, and minor political parties.  *See Rogers v. Corbett*, 468 F.3d 188,

190-91 (3d Cir. 2006).  "Minor political parties are political parties with registered

membership of less than 15% of the state-wide registration for all political parties."

*Id*. (citing 25 Pa. Stat. § 2872.2).  While major political parties, at present the

Republican and Democratic parties, place their candidates on the general election

ballot via a primary system, independent candidates and candidates for minor

political parties must place their names on the general election ballot by filing

nomination petitions.  *Id*. at 191.

In order for a nomination petition to be valid, Pennsylvania law requires

that it conform with the requirements set forth in 25 P.S. § 2911, Nominations by

Political Bodies.  § 2911(e)(5) states that:

> There shall be appended to each nomination paper offered for filing an
> affidavit of each candidate nominated therein, stating— . . . (5) that his name
> has not been presented as a candidate by nomination petitions for any public
> office to be voted for at the ensuing primary election, nor has he been
> nominated by any other nomination papers filed for any such office . . . .

25 P.S. § 2911(e)(5).  Often referred to as a "sore loser" provision, the provision

exists in the Election Code to preclude so-called "sore loser" candidates, *i.e*.,

candidates who lose a major party primary but nonetheless wish to appear on the

7

ballot, from participating in a general election.  *See In re Zulick*, 832 A.2d 572,

574-75 (Pa.Cmwlth. 2003) (citing *Storer v. Brown*, 415 U.S. 724 (1974)).  Most

often, such provisions are utilized for the cited purpose of preventing "ballot

clutter."  *Id.* at 575 (describing a previous ruling upholding a sore loser provision

as "not unconstitutional because it was 'a legitimate effort on the part of the

Pennsylvania General Assembly to provide clear choices to the electorate and to

preclude so called 'sore-loser' candidacies.'"); *Rogers v. Corbett*, 468 F.3d at 194-

95 (describing state interests in avoiding ballot clutter and ensuring viable

candidates "have long been recognized as valid ones.").

Notably, 25 P.S. § 2911(e)(5) is the provision to which Defendants cited

when they rejected Plaintiff's nomination papers.  However, in his Complaint,

Plaintiff brings forward two state law claims, arguing that § 2911(e)(5) and (6)[2]

and § 2911.1[3] do not bar his election papers.  Rather, Plaintiff argues that the

---

[2]       § 2911(e)(6) states that:

> There shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating— . . . (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year.

It does not appear that § 2911(e)(6) was utilized as grounds for Defendants' rejection of Plaintiff's nomination papers.  Rather, parties seem to primarily dispute the application of § 2911(e)(5) as it was that clause which was specifically relied upon by Defendants in their rejection of Plaintiff's nomination papers.  Therefore, we need not address § 2911(e)(6) in great depth herein.

[3]       § 2911.1 states that:

> Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the

Pennsylvania legislature never meant for those provisions to apply to nomination papers submitted in relation to federal law elections, particularly presidential elections. (Doc. 4, ¶¶ 1-2). Specifically, Plaintiff alleges that because § 2911(e)(5) only bars a candidate whose name has been "presented as a candidate . . . for any *public* office to be voted for at the ensuing primary election"[4] and at the primary election Plaintiff was presented as a candidate for the Democratic Primary nomination, which is an election for the appointment of delegates to a private "party office" and not a public position, Defendants have incorrectly interpreted § 2911(e)(5) as barring Plaintiff's nomination papers.

Plaintiff further argues that Defendants' interpretation is likely incorrect because in applying § 2911(e)(5) to his application in such a manner, § 2911(e)(5) contradicts the Qualifications Clause of Article II of the United States Constitution and settled case law that prohibits states from imposing further qualifications upon candidates for federal office. Unsurprisingly, Defendants disagree with Plaintiff's assertion that their interpretation is incorrect, and instead assert that § 2911(e)(5) is a ballot access requirement and not an additional qualification for federal office

---

candidate of a political body in a general or municipal election held in that same year nor shall any person who is a registered and enrolled member of a party be eligible to be the candidate of a political body for a special election.

§ 2911.1 was held unconstitutional as applied by the Supreme Court of Pennsylvania in *In re Nader*, 858 A.2d 1167 (Pa. 2004). However, that decision was in large part reached due to the failure of the Commonwealth to intervene and provide any statement of the state's interest in § 2911.1. As with § 2911(e)(6), § 2911.1 was not cited as grounds for Defendants' rejection of Plaintiff's nomination papers and as such is also not addressed in detail herein.

[4]     25 P.S. § 2911(e)(5) (emphasis added).

candidacy, and thus constitutional.  It is this disputed interpretation of

Pennsylvania election law that Defendants argue warrants this Court's abstention

pursuant to the *Pullman* Doctrine.[5]

### A.     Abstention Pursuant to the *Pullman* Doctrine

The Third Circuit addressed the use of the *Pullman* Doctrine in *Planned*

*Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000).  There, our

Court of Appeals stated that

> abstention under *Pullman* is appropriate where an unconstrued state statute
> is susceptible of a construction by the state judiciary which might avoid in
> whole or in part the necessity for a federal constitutional adjudication, or at
> least materially change the nature of the problem.  The purpose of abstaining
> is twofold: (1) to avoid a premature constitutional adjudication which could
> ultimately be displaced by a state court adjudication of state law; and (2) to
> avoid needless friction with state policies. . . .   *Pullman* should rarely be
> invoked.

*Id.* at 149 (internal citations and quotations omitted).  Relatedly, the Supreme

Court has warned that "abstention should not be ordered merely to await an

attempt to vindicate the claim in a state court.  Where there is no ambiguity in the

state statute, the federal court should not abstain but should proceed to decide the

federal constitutional claim."  *Wis. v. Constantineau*, 400 U.S. 433, 439 (1971).

---

[5]     Plaintiff utilizes a lengthy portion of his brief in opposition to Defendants' Motion to
Dismiss arguing that his nomination papers contain the requisite number of signatures needed for
acceptance.  As aforestated and in similar fashion to several of Plaintiff's claims, because
Defendants do not object to the number of signatures Plaintiff provided, we need not address
Plaintiff's arguments related to the signature requirement herein.

In order for a federal court to abstain under *Pullman*, the Third Circuit has

clarified that three "exceptional circumstances" must be present.

> First, there must be uncertain issues of state law underlying the federal
> constitutional claims.  Second, the state law issues must be amenable to a
> state court interpretation which could obviate the need to adjudicate or
> substantially narrow the scope of the federal constitutional claim.  Third, it
> must be that an erroneous construction of state law by the federal court
> would disrupt important state policies.

*Planned Parenthood*, 220 F.3d at 149-50 (quoting *Presbytery of N.J. of the*

*Orthodox Presbyterian Church v. Whitman,* 99 F.3d 101, 106 (3d Cir.1996), *cert.*

*denied,* 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997)).

There need not be a pending state court action in order for a federal court to

invoke *Pullman*, and indeed in the instant case no such action exists.[6]  However,

we harbor no doubt that Plaintiff was well aware of his ability to address the

above-described state law arguments in Commonwealth Court, and inexplicably

chose not to do so, despite knowledge that the Commonwealth Court, like this

Court, has the power to order the acceptance of Plaintiff's nomination papers.

Defendants now argue that the state law issues raised warrant this Court's

abstention, and for the reasons that follow, we agree.

As noted above, in order for *Pullman* to be invoked, an uncertain issue of

state law must exist which underlies the federal claims brought in federal court.  As

---

[6]     CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 4242 Avoidance
of Federal Constitutional Questions – When Abstention Required (3d ed. 2016) (noting that
traditionally, once federal abstention is ordered by a federal court do the parties commence an
action in state court).

discussed above, here that issue involves the correct interpretation of § 2911(e)(5).

Plaintiff argues that § 2911(e)(5) is unconstitutional as applied, and further states

that his candidacy as the Democratic Party nominee for the presidency does not

constitute a "public office" within the meaning of § 2911(e)(5).  Thus, Plaintiff

concludes that the law was never meant to pertain to candidates such as he.

However, Defendants argue that the state law applies uniformly to all candidates,

including those competing for the nomination of a major political party, and is not

unconstitutional in such an application.  However, neither party can point us to any

case law, either federal or state, that clarifies the intent of the Pennsylvania

legislature in drafting this requirement.

In determining whether a law is sufficiently ambiguous or uncertain so as to

trigger a *Pullman* abstention, the Supreme Court has explicitly noted that "not

every vagueness challenge to an uninterpreted state statute or regulation constitutes

a proper case for abstention."  *Procunier v. Martinez*, 416 U.S. 396, 401, 94 S.Ct.

1800 (1974) *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 109

S.Ct. 1874 (1989).  However, in *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628

(3d Cir. 1991), the Third Circuit determined that a zoning ordinance was

sufficiently uncertain where two potential interpretations existed regarding whether

video viewing booths constituted a "retail use" within the meaning of the

ordinance.  *Chez Sez III*, 945 F.2d at 632.

Here too, we find that the Pennsylvania election law in question is reasonably susceptible to two possible interpretations.  Indeed, both parties put forth plausible interpretations of the statute.  Again, the Defendants have not presented any case law that would show that the position of the nominee for President of the United States, from either the Republican or Democratic Parties constitutes a "public" office.  However, that the Pennsylvania legislature would construe such an office as public conforms with the recognized legal purpose of a "sore loser" provision, namely, to preclude "sore loser" candidates and prevent needless cluttering of the ballot.

Conversely, while Plaintiff argues that the state law is "clear," he too has not presented any case law that would indicate that his position represents the correct interpretation as intended by the Commonwealth.  Instead, Plaintiff argues that a colloquial understanding of the Pennsylvania presidential primary indicates that the nomination procedure does not appoint its winner to a public office.  Rather, the role of "nominee" is a purely private one, and the major political parties' primary elections serve only to appoint delegates that would support their nominees, and thus are not to be construed as falling within the purview of § 2911(e)(5).  We disagree that this is the "obvious" interpretation that the Pennsylvania legislature intended, due predominantly to Defendants' arguments regarding ballot clutter as discussed above.  Further, in § 2911(e)(5) the Pennsylvania legislature specifically

references that nomination to public office in "the ensuing primary election" is

sufficient to preclude a candidate from filing nomination papers, without language

excluding presidential primaries, or candidates who ran for the party nomination.

As the exclusion of such candidates from a general election is often the

predominant purpose in a state's "sore loser" provision, it is far from "obvious"

that the Pennsylvania legislature would not intend for § 2911(e)(5) to apply such

candidates, as Plaintiff suggests.  Rather, we find that both parties' interpretations

could be meritorious.  Thus, the issue brought forth by the parties is sufficiently

unclear that the first prong of the *Pullman* analysis is met and the language is far

from "clear and unmistakable."  *Chez Sez III*, 945 F.2d at 632 (quoting *Hughes v.

Lipscher*, 906 F.2d 961, 965 (3d Cir. 1990).

We turn now to the second prong of the *Pullman* analysis, which concerns

whether the election law is susceptible to an interpretation by a state court which

would obviate the need for this Court to rule on the constitutional issues raised by

Plaintiff.  *See id*. at 632-33 ("The second factor to be considered in the *Pullman*

analysis is whether the Ordinance is amenable to an interpretation by the state

courts that would obviate the need for or substantially narrow the scope of the

constitutional issues") (internal citations omitted).  If the state court concurs with

Plaintiff's interpretation of the statute and finds that a presidential primary is not

within the purview of § 2911(e)(5), then the state law does not apply to Plaintiff

whatsoever, and "the basis for [Plaintiff's] constitutional claim would be eliminated." *Id.* at 633.  Thus, the second requirement under *Pullman* is met.

The third prong of the *Pullman* analysis concerns whether an erroneous construction of state law would disrupt important state policies.  An erroneous decision so temporally close to the election could seriously disrupt Pennsylvania's election process.  Furthermore, in the past, courts have held that a mistaken interpretation of Pennsylvania's election law could also damage the integrity of that election process.  *NAACP Phila. Branch v. Ridge*, No. CIV. A. 00-2855, 2000 WL 1146619 at *6-7 (E.D.Pa., Aug. 14, 2000) (abstaining in a case concerning the constitutionality of the Pennsylvania Voter Registration Act as it pertains to ex-felons and emphasizing that "voting regulations implicate important state policies"); *Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F.Supp.2d 684, 703-04 (W.D.Pa. 2003) (deciding in favor of abstention and noting that "an erroneous construction of the absentee ballot provision of the election code could disrupt extremely important state policies concerning voting rights").  Finally, in considering whether the state of California had an interest in regulating its primary election process, the Supreme Court opined that "states play a major role in structuring and monitoring the election process, including primaries."  *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (citing *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059 (1992)).  Thus, in conformity with past precedent,

here too we find that an erroneous interpretation of the law would be gravely detrimental to important Pennsylvania interests concerning state election procedures.

Having found that all three factors necessary for this Court to abstain are satisfied, we turn now to a discretionary determination of whether abstention is appropriate given the particular facts of this case. *Chez Sez III*, 945 F.2d at 631 ("If the district court finds that all three of the "special circumstances" are present, it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case . . . ."). In making its determination, a court may "weigh[ ] such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Planned Parenthood*, 220 F.3d at 150 (3d Cir. 2000) (citing *Artway v. Attn. General of N.J.,* 81 F.3d 1235, 1270 (3d Cir. 1996)).

The Third Circuit has held that '"absent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the threshold 'special circumstances' have been fulfilled.'" *Chez Sez III*, 945 F.2d at 633 (citing *D'Iorio v. Del. Cnty*., 592 F.2d 681, 691 (3d Cir. 1978)).

Though Plaintiff cites no case law for his contention, Plaintiff reasserts his argument that abstention is not appropriate because of the strength of his constitutional arguments. (Doc. 12, p. 17 ("The clear nature of the federal

constitutional impairment militates against abstention in this case.")).  Indeed,

Plaintiff utilizes the majority of his brief in opposition to Defendants' Motion to

Dismiss to argue his constitutional claims on the merits, much of which we find

inapposite here.  Rather, we consider the factors listed above in determining

whether, in our discretion, abstention is proper, and we do not adjudicate the merits

of Plaintiff's claims.  As such, Plaintiff's first argument regarding this Court's

discretionary analysis is premature and misplaced.

Plaintiff also argues that the delay in litigation that abstention would cause

counsels against application of the *Pullman* Doctrine.  Though this argument is

more appurtenant, we find it unpersuasive.  While Plaintiff complains that

"[D]efendants' desire . . . abstention . . . because they want to run the clock out,

print ballots, and preclude [P]laintiff any meaningful relief for [D]efendants' clear

constitutional violations," (doc. 12, p. 17), we conclude that this is not the case.[7]

Rather, upon issuing their rejection, Defendants *immediately placed Plaintiff on*

*notice that his best recourse was to file suit in Commonwealth Court*, where

Plaintiff's legal issues could be resolved and Defendants could be ordered to

accept Plaintiff's nomination papers if necessary.  That Plaintiff pointedly elected

---

[7]        Indeed, according to Defendants' Reply Brief, (doc. 13), Defendants do not simply "want
to . . . print ballots" as Plaintiff contends.  (Doc. 12, p. 17).  Rather, ballots have already been
printed and distributed to overseas voters and military personnel in accordance with previously
existing scheduling.  (Doc. 13, p. 13).

not to follow this course hardly indicates Defendants' lack of good will in advocating for this abstention.

Furthermore, we disagree that Plaintiff can find no meaningful recourse in state court.  Plaintiff is free to seek a declaratory judgment in his favor.  Indeed, the election remains over two months away.   In so finding, we note the holding by the United States District Court for the Eastern District of Pennsylvania, which when faced with a similar factual scenario, reasoned that:

> Plaintiffs . . . contend that abstention is not appropriate because abstention would make it "highly unlikely" that their constitutional challenge would be resolved before the November 2000 general election.  The [C]ourt recognizes that it must consider the impact that delay might have on the litigants, however, it does not agree with Plaintiffs' contention that "the time constraints caused by the upcoming election means that the option of pursuing their claims in state court does not offer Plaintiffs an adequate remedy."  . . . Plaintiffs may file an action for declaratory judgment, a petition for extraordinary relief and/or mandamus.  There is ample time before the November 2000 election, and there is no reason to presume that a prompt resolution of the issue cannot be obtained from the state courts.

*NAACP Phila. Branch*, 2000 WL 1146619, at *8.  We concur with this rationale, and conclude that Plaintiff may yet find meaningful relief in state court.[8]

---

[8]   Plaintiff requests that, to the extent this Court may find in favor of abstention, we "Order a short briefing period, either during the abstention period, or thereafter, to permit this Court to quickly take up and decide the federal constitutional issues if the Supreme Court of Pennsylvania determines that § 2911(e)(5) applies in the context of presidential elections." (Doc. 12, p. 18).

"The *Pullman* doctrine does not lead to outright dismissal of a case; rather the federal court stays its hand until the state courts have conclusively decided all relevant state law issues." *NAACP Phila. Branch*, 2000 WL 1146619, at *8 (citing *Growe v. Emison*, 507 U.S. 25, 32 n. 1 (1993)).  As such, we shall retain jurisdiction over the federal constitutional issues presented by this case.  To the extent that an expedited briefing schedule on issues of federal law may benefit the parties in the future, such a determination regarding expedited briefing and other scheduling matters shall be addressed as those issues presents themselves.

We now turn to Defendants' arguments regarding this Court's discretionary determination of whether abstention is proper.  Defendants first emphasize that they were prompt in responding to Plaintiff's nomination papers, and that Plaintiff did not file those papers until August 1, 2016, the final day available for their submission.  Further, after the papers' rejection, Plaintiff delayed fourteen days (from August 4, 2016 until August 18, 2016) in filing his Amended Complaint, and adequately stating the grounds upon which Plaintiff requests relief.  Thus, any delay in time has not arisen through the nefarious machinations of the Defendants, as Plaintiff alleges, but is rather due to Plaintiff's own actions.

Defendants go on to emphasize important equitable considerations in this Court's decision to abstain.  Predominantly, Defendants point to the Supreme Court's language in *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 106 (1989).  There, the Supreme Court dismissed prospective injunctive claims against a state official on Eleventh Amendment grounds, emphasizing that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism . . . ."  *Pennhurst*, 465 U.S. at 89. Though the Court utilized this rationale to conclude that the doctrines of *Young* and *Edelman* are inapplicable in a federal suit against state officials on the basis of state law, the principles the Court outlined are also instructive here.  Plaintiff is

asking this federal District Court to find that state officials have wrongly interpreted state law, and to replace their interpretations with Plaintiff's own. This role is not ours to assume where, as here, an alternative appropriately exists with the Pennsylvania state courts. As emphasized above, the purpose of the *Pullman* doctrine is twofold: "to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and to avoid 'needless friction with state policies." *NAACP Phila. Branch*, 2000 WL 1146619, at *3 (citing *R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 500 (1941)). Such a scenario as the one Plaintiff has set before us is rife with such friction, and in our discretion we find abstention the appropriate and necessary recourse to avoid this unfavorable outcome.

### B. Injunctive Relief

In a single line near the close of his brief, Plaintiff requests that, should we abstain, then "this Court . . . impose a temporary restraining order on Defendants prohibiting them from printing ballots until the issues in this action have been conclusively determined." (Doc. 12, p. 18). Plaintiff has not filed a formal motion seeking a temporary restraining order or a preliminary injunction to this effect whatsoever. In the ordinary course of this Court's motions' practice, we would decline to address such a flippant remark as this one-line request included in Plaintiff's briefing, without further submissions on the issue. However, in this

instance particularly, where Defendants have responded in their Reply Brief with indications that ballot printing has not only begun but absentee ballots have indeed already been printed and dispatched to military and overseas persons in remote areas of the globe, this Court shall not entertain Plaintiff's informal request.  (Doc. 13, p. 13).  Furthermore, Defendants indicate that they are not even the appropriate party to receive such a request, as balloting printing is within the purview of the County Election Officials of each of Pennsylvania's sixty-seven counties, and is not within their power.[9]  *See* 25 P.S. § 2964.  As such, though courts in the past have entertained parties' requests for emergency relief contemporaneously with a decision to abstain on the merits of the case, *see Pierce*, 324 F.Supp.2d at 704 (ruling to abstain but also granting a limited preliminary injunction to preserve the rights of voters to challenge absentee ballots), this scenario is distinguishable from such instances, as indeed no motion has even been filed for such relief.

## IV.   CONCLUSION

For the foregoing reasons, we shall abstain from ruling on the merits of Plaintiff's claims and instead stay the above-captioned case pending a ruling from the state court.

---

[9]      We make no ruling on the merits of Defendants' arguments in response to Plaintiff's request for emergency relief as, like Plaintiff, Defendants' arguments come in an informal and off-the-cuff manner.  We only repeat the arguments here in an effort to communicate to the parties that the issues this Court would have to consider in deciding a request for emergency relief are complex and involved, and thus not suited to the ill-contrived method that Plaintiff pursues.  Indeed, it appears that Plaintiff's one-line request was merely a last resort and afterthought to Plaintiff's more substantial arguments against abstention.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Court shall **ABSTAIN** from ruling on the merits of Plaintiff's

federal claims pending an adjudication from the state court on the

pertinent matters of Pennsylvania law outlined herein.

2.    This matter is hereby **STAYED** in accordance with the above-issued

memorandum until further Order of this Court.

3.    Counsel **SHALL JOINTLY FILE** a status report regarding this and

any ancillary actions to the docket at or by the expiration of sixty (60)

days.


 s/ John E. Jones III
John E. Jones III
United States District Judge