## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROQUE "ROCKY" DE LA FUENTE** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 1:16-CV-01696** |
| **v.** | : | **Judge Jones** |
| | : | |
| **PEDRO A. CORTÉS, in his official** | : | **Complaint filed 8/15/16** |
| **capacity as the Secretary of the** | : | |
| **Commonwealth of Pennsylvania, et al,** | : | |
| | : | *Filed Electronically* |
| **Defendants.** | : | |
| | : | |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
### PLAINTIFF'S SECOND AMENDED COMPLAINT

**Respectfully submitted,**

**JOSH SHAPIRO**
**Attorney General**


**By:**   *s/Kenneth L. Joel*
               **KENNETH L. JOEL**
               **Chief Deputy Attorney General**
               **Attorney ID 72370**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**            **KELI M. NEARY**
**Phone: (717) 787-8106**           **Senior Deputy Attorney General**
**Fax:   (717) 772-4526**           **Attorney ID 205178**
kjoel@attorneygeneral.gov

               **NICOLE J. RADZIEWICZ**
               **Deputy Attorney General**
               **Attorney ID 314061**


**DATE:  June 8, 2017**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ALLEGATIONS ..................................................................................4

QUESTIONS PRESENTED ...................................................................7

ARGUMENT ......................................................................................8

A.   Pennsylvania Has a Significant Role in Elections...........................8

B.   Motion to Dismiss Standard ........................................................10

C.   There is No "Case or Controversy" Here .....................................12

    1.   Plaintiff's Claims Related to the 2020 Election Are
       Not Ripe ...........................................................................13

    2.   Plaintiff Lacks Standing to Bring His Constitutional
       Challenges ........................................................................16

D.   Plaintiff's "Sore Loser" Challenge is Barred by *Res Judicata*......................19

E.   Pennsylvania's "Sore Loser" Provision and Disaffiliation Provision
    Are Constitutional........................................................................21

F.   This Court Should Not Decide Plaintiff's Substantive Challenges to the
    Provisions Governing Who May Sign the Affidavit of Circulator for
    Candidates Seeking Access to the Pennsylvania Democratic Primary
    Ballot........................................................................................24

G.   Plaintiff's Substantive Challenges to the Provisions Governing Who
    Sign the Affidavit of Circulator for Candidates Seeking Access to the
    Pennsylvania Democratic Primary Ballot is Without Merit.........................25

CONCLUSION ..................................................................................30

## TABLE OF AUTHORITIES

### CASES

*Allen v. Wright*, 48 U.S. 737 (1984) .........................................................................12

*Am. Party of Tex. v. White*, 415 U.S. 767 (1974) .................................................9, 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................10, 11

*Balent v. City of Wilkes-Barre*, 669 A.2d 309 (Pa. 1995) ..................................20, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................10, 11

*Burdick v. Takushi*, 504 U.S. 428 (1992)...................................................................8

    *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) ......................8, 26, 27, 28

*Cartwright v. Barnes*, 304 F.3d 1138 (11th Cir. 2002) ...........................................23

*City of Chicago v. Morales*, 527 U.S. 41 (1999) .....................................................13

*Colonial Park Care Ctr., LLC v. Dallas*, 2016 WL 4765966 (M.D. Pa. Sept. 13, 2016) ............................................................................................................21

*Constitution Party of Pa. v. Cortés*, 712 F. Supp. 2d 387 (E.D. Pa. 2010), *aff'd,* 433 Fed. App'x 89 (3d Cir. 2011)......................................................16, 19

*Doe v. County of Centre, PA,* 242 F.3d 437, (3d Cir. 2001) which in turn quotes *Texas v. U.S.,* 523 U.S. 296 (1998))........................................................16

*Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107 (1981)...............................................................................10, 27, 28

*Edmonson v. Lincoln Nat. Life Insurance Co.*, 725 F.3d 406 (3d Cir. 2013)..........12

*Eu v. S.F. Cnty. Democratic Cen. Committee*, 489 U.S. 214 (1989)........................28

*Exxon Mobil Corp. v. Saudi Basic Industrial Corp.*, 544 U.S. 280 (2005).............20

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ....................................11

*Green Party v. Aichele*, 89 F. Supp. 3d 723 (E.D. Pa. 2015) ...........................18, 24

*In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010)........11

*Int'l Bhd of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912 (3d Cir. 1987) ...................................................13

*Jenness v. Fortson*, 403 U.S. 431 (1971)..............................................................9, 26

*League of Women Voters of Pennsylvania v. Cappy*, 2009 WL 1845217 (M.D. Pa. June 26, 2009) ...................................................................................13

*Libertarian Party of Ill. v. Rednour*, 108 F.3d 768 (7th Cir. 1997).........................23

*Libertarian Party of Michigan v. Johnson*, 905 F. Supp. 2d 751 (E.D. Mich. 2012), *aff'd*, 714 F.3d 929 (6th Cir. 2013)...........................................................23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................12, 17

*Martin v. Keitel*, 205 Fed. App'x 925, 928 (3d Cir. 2006) .....................................14

*Maslow v. Board of Elections in the City of New York*, 658 F.3d 291 (2d Cir. 2011)...............................................................................................27

*Mortensen v. First Federal Sav. & Loan*, 549 F.2d 884 (3d Cir. 1977).................12

*N.Y. State Board of Elections v. Lopez Torres*, 552 U.S. 196 (2008).....................28

*National Committee of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71 (W.D. Tex. 1996) ......................................................................................23, 24

*Pa. Prison Soc. v. Cortés*, 508 F.3d 156 (3d Cir. 2007) ...................................17, 19

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...............................11

*Raines v. Byrd*, 521 U.S. 811 (1997) .....................................................................16

*Rosario v. Rockefeller*, 410 U.S. 752 (1973).....................................................9, 26

*Springer v. Balough*, 96 F. Supp. 2d 1250 (N.D. Okla.), *aff'd*, 232 F.3d 902 (10th Cir. 2000)..................................................................................23

*Storer v. Brown*, 415 U.S. 724 (1974) ............................................22, 26

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986)................9, 10, 26, 28

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)...............8, 9, 26, 28

*Toll Bros v. Twp of Readington*, 555 F.3d 131 (3d Cir. 2009) ..........................12, 16

*Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542 (3d Cir. 2006) .............................................................................................21

*United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ......................................13

*United States v. Salerno*, 481 U.S. 739 (1987)........................................................13

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ......................................23

*Van Susteren v. Jones*, 331 F.3d 1024 (9th Cir. 2003) ............................................22

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)..........13

*Wyatt, Virgin Islands, Inc. v. Government of the Virgin Islands*, 385 F.3d 801 (3d Cir. 2004)..................................................................................15

**STATUTES**

25 P.S. § 2869 ........................................................................................24

25 P.S. § 2911(e)(5) ..........................................................................5, 6, 24

**RULES**

Fed. R. Civ. P. 12(b)(1)............................................................................11

Pa. R. App. P. 1101 ................................................................................2, 7

## **INTRODUCTION**

Roque "Rocky" De La Fuente ("Plaintiff") appeared on the Pennsylvania Democratic primary ballot for the office of President of the United States in April of 2016.  He finished a distant third out of three.  Plaintiff then tried to get on the Pennsylvania 2016 general election ballot as the presidential candidate for a newly created political body.  Because Plaintiff had appeared on Pennsylvania Democratic primary ballot, the Commonwealth's "sore loser" law prevented Pedro A. Cortés and Jonathan Marks (collectively, "Defendants") from accepting his nomination papers.

Rather than immediately seeking review in Commonwealth Court, Plaintiff came here to try and force his way onto the November ballot.  *See* ECF 1 (Complaint for Emergency Mandamus, Injunctive & Declaratory Relief seeking— among other things—an emergency order compelling Defendants to accept Plaintiff's nomination papers).  Surprisingly, Plaintiff's initial pleading did not challenge the "sore loser" provision of Pennsylvania law, which was the only stated reason for the rejection of his nomination papers.  Instead, Plaintiff challenged Pennsylvania's disaffiliation provision.  ECF 1, Count I, Count II. Perhaps realizing this problem, Plaintiff quickly filed an Amended Complaint a few days later.  ECF 4.  Plaintiff's second attempt at litigating his way onto to the ballot continued his challenge to the immaterial disaffiliation provision and added

constitutional challenges to Pennsylvania's "sore loser" law.  ECF 4, Count I, Count II.  Plaintiff's Amended Complaint also specifically asked this Court to interpret unsettled questions of state law.  Count III.

As such, this Court abstained pursuant to the *Pullman* doctrine.  ECF 15. Plaintiff then went to Commonwealth Court and alleged, in relevant part, that the "sore loser" law did not prevent him from accessing the general election ballot. Based on this argument, Plaintiff sought an emergency order compelling Defendants to accept his nomination papers.  Inexplicably, no constitutional challenge was presented to the "sore loser" provision.  *See* Exhibit C (Opinion) at 7 (noting that the plaintiff had brought no constitutional challenge to the "sore loser" provision of Pennsylvania law).  After a hearing, Commonwealth Court dismissed that litigation.  Exhibit C (Opinion).  Plaintiff did not appeal this decision to the Pennsylvania Supreme Court—even though his appeal would have been as of right.  Pa. R. App. P. 1101.

After the November 2016 election, Plaintiff returned to this Court and noted that he wished to file another pleading.  ECF 16.  In filings with this Court, Plaintiff represented that his Second Amended Complaint would be filed by December 2, 2016.  ECF 19 at 3-4.  Since the November 2016 election mooted the controversy between the parties, Plaintiff represented that he would provide an affidavit to establish facts to support the continuation of this litigation.  ECF 19 at

3-4.  In January of 2017, Plaintiff finally filed a motion for leave to file the Second Amended Complaint.  ECF 25.  After briefing was completed, this Court allowed the filing of the Second Amended Complaint.  ECF 32.  And, almost a month later, Plaintiff finally filed his Second Amended Complaint, which vastly expanded the number of constitutional challenges presented but which did not include the promised affidavit.  ECF 33.

Plaintiff rightly no longer seeks inclusion on the 2016 Pennsylvania general election ballot.  ECF 33.  The November election has been over for months and the dispute over whether Defendants correctly rejected his 2016 nomination papers is now moot.  Instead, with skeletal and unverified references to possible events that are, at best, years away, Plaintiff seeks to invalidate not only the "sore loser" provision and the disaffiliation provision but also provisions governing who may sign the affidavit of circulator for partisan candidates seeking to access the Pennsylvania primary ballot and political body candidates seeking access to the Pennsylvania general election ballot.   Remarkably, Plaintiff challenges the circulator provisions even though he concedes that, in 2016, he gathered sufficient signatures to access both ballots.

Plaintiff's "kitchen-sink" challenges must be rejected for any number of reasons.  At the outset, no claim is actually justiciable.  Beyond this, given Plaintiff's litigation before Commonwealth Court, the "sore loser" claim is barred

3

by *res judicata*.   Furthermore, cases have repeatedly held that "sore loser" and disaffiliation provisions pass constitutional muster.   Challenges over who can sign the affidavit of circulator accompanying nomination papers for independent candidates seeking to access the Pennsylvania general election ballot have been previously resolved and, thus, present no "case or controversy" for this Court to decide.   And, challenges to provisions regulating who can sign the affidavit of circulator accompanying nomination petitions for Democrats or Republicans seeking to access the Pennsylvania primary ballot is best left until Judge Kane decides the pending cross-motions for summary judgment in a case in which Attorney Rossi has challenged these precise provisions.

In the end, Plaintiff's quest to do away with constitutionally allowable requirements that provide order and structure to Pennsylvania's election process furthers nothing except Plaintiff's quixotic dream of becoming president in 2020. The Second Amended Complaint should be dismissed with prejudice and this case ended.

## **ALLEGATIONS**

The following factual[1] allegations are taken from Plaintiff's Second Amended Complaint and from filings before Commonwealth Court.   Of course,

---

[1]   The Second Amended Complaint is littered with legal conclusions and citations to statutes and arguments—all of which this Court must disregard in resolving our Motion to Dismiss.

Defendants accept Plaintiff's factual allegations as true for purposes of this Motion only.

Plaintiff was a candidate for the 2016 Democratic nomination for President and was on the Pennsylvania Democratic primary ballot. ECF 33, ¶¶ 22-23. He finished a distant third out of three. *See* Pa. Dep't of State Official Returns, http://www.electionreturns.pa.gov/ENR_New/Home/SummaryResults?ElectionID =54&ElectionType=P&IsActive=0 (Plaintiff received 14,439 votes, finishing a distant third—with 0.86% of the vote). Plaintiff also was an independent candidate for President in 2016. ECF 33, ¶ 20. He tried to file nomination papers to get on the Pennsylvania general election ballot as an independent candidate for President. ECF 33, ¶ 24. Plaintiff's nomination papers were rejected because he had appeared as a candidate for President on the Pennsylvania Democratic primary ballot. ECF 33, ¶ 25.[2]

Plaintiff alleges that he has "announced that he will be a candidate for the 2020 Democratic nomination for President of the United States" and that if he does not win the Democratic nomination, he will seek the office as an independent

---

[2]     Plaintiff claims that the "sole" reason his name was not on the ballot was 25 P.S. § 2911(e)(5) and 25 P.S. § 2911(e)(6) and 25 P.S. § 2911.1. ECF 33, ¶ 28. Beyond the fact that three reasons cannot be the "sole" reason for anything, it is notable that Plaintiff does not blame his inability to access the ballot on provisions relating to the collection of signatures that he now also challenges.

candidate.  ECF 33, ¶¶ 29-30.[3]  Plaintiff alleges that it is now planning for the 2020

presidential election.   ECF 33, ¶ 32.   To gain signatures to access the ballot,

Plaintiff claims that he wants to hire "the same professional circulators in 2020

who circulated his nomination petition and nomination papers in 2016." ECF 33, ¶

52.[4]  Plaintiff claims to be a registered Democrat and a resident of Florida.  ECF

33, ¶¶ 17, 21.

Plaintiff alleges that, in 2016, Defendants rejected his nomination papers

seeking access to the November general election ballot because "plaintiff had

appeared on the Commonwealth's 2016 Democratic presidential preference

primary."  ECF 33, ¶ 25.  Plaintiff "believes that in the future, defendants may

attempt to reject plaintiff's qualification to appear on the Commonwealth's general

election ballot through enforcement of 25 P.S. §§ 2911(e)(6) and/or 2911.1"—ECF

---

[3]     Counsel performed a Google search for "De La Fuente 2020 President" and came up with nothing other than a reference on Plaintiff's Wikipedia page, which has a single sentence referencing the 2020 election and a citation to an article that merely got its information from Plaintiff's filings in this case.  *See* https://en.wikipedia.org/wiki/Rocky_De_La_Fuente (last visited May 25, 2017).

[4]     Plaintiff references a registered Republican who, in 2016, expressed a willingness to circulate nomination petitions for him but was prohibited by Pennsylvania law from doing so.  ECF 33, ¶ 50.  Plaintiff also claims that, in 2016, others were prohibited from circulating nomination papers and petitions for him because of Pennsylvania law.  ECF 33, ¶ 51.  These allegations are irrelevant as Plaintiff admits that he wants to hire the same "professional circulators in 2020 who circulated his nomination petition and nomination papers in 2016." ECF 33, ¶ 52.  In short, since the unidentified individual referenced in ¶ 50 and ¶ 51 did not circulate for Plaintiff, it cannot be the person he desires to hire for 2020—as asserted in ¶ 52.

33, ¶ 26—but there is no factual allegation that he may be prevented in 2020 because of the "sore loser" provision.  Plaintiff also surmises that the provisions governing who may sign the affidavit of circulator for ballot access increase the time needed to gather signatures and cost of such efforts while the provision decrease those who can gather signatures.  ECF 33, ¶¶ 53-56.

In litigation before Commonwealth Court, Plaintiff challenged the interpretation of Pennsylvania's "sore loser" provision; however, he did not present any constitutional challenge to this provision.  *See* Exhibit C (Opinion) at 7 (noting that the plaintiff had brought no constitutional challenge to the "sore loser" provision of Pennsylvania law).  After a hearing, Commonwealth Court dismissed that litigation.  Exhibit C (Opinion).  Plaintiff did not appeal this decision to the Pennsylvania Supreme Court—even though such an appeal would have been as of right.  Pa. R. App. P. 1101.

## QUESTIONS PRESENTED

1.     Whether there is no "case or controversy" over Plaintiff's constitutional challenges.

2.     Whether Plaintiff's challenge to the "sore loser" provision is barred by *res judicata* and Plaintiff's strategic litigation decisions before the Commonwealth Court.

3.      Whether Plaintiff's challenges to the "sore loser" provision and the disaffiliation provision must be dismissed because case law has already held that such provisions are constitutional.

4.      Whether Plaintiff's challenges to the requirements governing who may collect signatures for nomination petitions should be held in abeyance until Judge Kane resolves the fully briefed and pending summary judgment motions relating to these provisions in a case that is also being litigated by Attorney Rossi.

Suggested answers to all questions:  Yes

## ARGUMENT

### A.      Pennsylvania Has A Significant Role In Elections

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections" because "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (further quotations omitted).  As such, Pennsylvania has "a major role to play in structuring and monitoring the election process, including primaries." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997) ("[s]tates certainly have an interest in protecting the integrity, fairness, and

efficiency of their ballots and election processes as means for electing public officials"); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)).

Indeed, it is "too plain for argument" that the Commonwealth "may require parties to use the primary format for selecting their nominees." *Jones*, 530 U.S. at 572 (citing *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974)). To prevent burdening ballots with frivolous candidacies, Pennsylvania "may require parties to demonstrate 'a significant modicum of support' before allowing their candidates a place on that ballot." *Id*. at 572 (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). To avoid party raiding—a process by which dedicated members of one party formally switch to another party to alter the outcome of that party's primary—Pennsylvania can have closed primaries and impose reasonable restrictions on participation in the primary process. *Id*. at 572 (citing *Rosario v. Rockefeller*, 410 U.S. 752 (1973)). Indeed, the Supreme Court has repeatedly recognized that a state may constitutionally have laws that promote the two-party system. *See Timmons*, 520 U.S. at 366-67 ("[t]he Constitution permits the Minnesota Legislature to decide that political stability is best served through a healthy two-party system").

As it relates to the two major parties, the Supreme Court has made clear that closed primaries are constitutionally sound and that such systems further First Amendment rights—speech and associational—of "citizens to band together in

promoting among the electorate candidates who espouse their political views." *Jones*, 530 U.S. at 573; *see also id*. at 573 ("[t]he formation of national political parties was almost concurrent with the formation of the Republic itself"). "Consistent with this tradition … the First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' *Tashjian, supra*, at 214-15, which 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.'" *Jones*, 530 U.S. at 574 (quoting also *Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 122 (1981)).   And, a necessary corollary of the "right to associate is the right not to associate" because "[f]reedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Id*. at 574.

**B.   Motion to Dismiss Standard**

Rule 8 demands more than "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In fact, a complaint that offers nothing more than "labels and conclusions" or a "'formulaic recitation of the elements of a cause of action will not do.'"   *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 555).   Instead, a complaint "must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).   This Court must disregard legal conclusions and arguments and, instead, must confine its Rule 12 analysis to factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, at 1950.  As the Supreme Court instructs in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* at 1950.  Put another way, where a "complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1).  Although, resolution of a Rule 12(b)(6) motion requires a court must accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff, *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010), a Rule 12(b)(1) motion does not require a court to consider all allegations of the

complaint as true because the court must weigh the evidence to ensure that it has the power to hear the case. *Mortensen v. First Fed. Sav. & Loan,* 549 F.2d 884, 891 (3d Cir. 1977).

## C. There Is No "Case Or Controversy" Here

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 414-15 (3d Cir. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992)); *see also Toll Bros. v. Twp. of Readington,* 555 F.3d 131, 137-38 (3d Cir. 2009) ("[w]ithout a case-or-controversy requirement, the judicial power would extend[ ] to every question under the constitution, and the other departments would be swallowed up by the judiciary") (internal quotations omitted). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines that 'cluster about Article III.'" *Toll Bros.,* 555 F.3d at 137 (quoting *Allen v. Wright,* 48 U.S. 737, 750 (1984)). These doctrines "include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Id.*

Plaintiff is trying to upend many provisions of Pennsylvania's Election Code that have been in place for decades. For example, Plaintiff challenges—facially and as applied to him—provisions regulating who can sign affidavits of circulators for candidates seeking access to Pennsylvania's primary ballot and Pennsylvania's

general election ballot.  *See* ECF 33, Count VII, Count VIII, Count IX, Count X, Count XI, Count XII.[5]  Plaintiff also challenges Pennsylvania's "sore loser" provision and disaffiliation provision by claiming that these provisions violate the First Amendment, the Fourteenth Amendment, and the Qualifications Clause of the U.S. Constitution.  ECF 33, Count I, Count II, Count III, Count IV, Count V, Count VI.  At the outset, Plaintiff's challenges are not justiciable.

## 1. Plaintiff's Claims Related To The 2020 Election Are Not Ripe

The 2016 election is over.[6]  Recognizing this, Plaintiff changes course and now bases all of his constitutional challenges on a self-serving allegation that he

---

[5]  An "as-applied attack … does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."  *United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010).  On the other hand, a plaintiff asserting a facial challenge "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question."  *City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999).  Thus, a plaintiff succeeds in a facial challenge only by showing there is "no set of circumstances" that exists under which the statute at issue would be valid—a "particularly demanding" standard indeed.  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  As the Court explained, "[c]laims of facial invalidity often rest on speculation" about the reach of a statute and "run contrary to the fundamental principle of judicial restraint."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Because the remedy for a successful facial challenge is the complete invalidation of a law, this Court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."  *Id.*

[6]  Plaintiff no longer seeks injunctive relief compelling Defendants to accept his nomination papers for the November 2016 general election; however, the Second Amended Complaint it littered with allegations regarding what happened during the 2016 election.  Cases are "moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Int'l Bhd. of*

plans to run again in 2020—three years from now—as a Democrat candidate for President and as an independent candidate for President.[7]  Plaintiff's far-off desire is simply insufficient to invoke this Court's limited jurisdiction.

For example, as for the "sore loser" provision, Plaintiff will need to get sufficient signatures to qualify for the Pennsylvania Democratic presidential primary.  He will then need to survive any challenge to his nomination petition (and the signatures contained in that petition) that could be brought by any of the 4,000,000 Pennsylvania Democrats.  If he makes it to the primary ballot, he will actually have to lose in the Democratic primary.  Plaintiff will then need to get enough signatures on nomination papers to be an independent candidate for POTUS.  Needless to say, this is a whole lot of ifs.

As for the provision governing who may sign the affidavit of circulator for a candidate seeking access to the Pennsylvania Democratic primary ballot or the

---

*Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987); *see also League of Women Voters of Pennsylvania v. Cappy*, 2009 WL 1845217, at *3 (M.D. Pa. June 26, 2009) ("[a] case is deemed moot when the controversy between the parties has ... clearly ceased to be definite and concrete") (internal quotations omitted) (Exhibit B).  Further, declaratory judgment relief does not permit this Court to declare that rights were violated in the past. *See Martin v. Keitel*, 205 Fed. App'x 925, 928 (3d Cir. 2006) (it is improper to request declaratory relief "merely [for] a declaration that defendants violated his constitutional rights in the past").  There is no live controversy with respect to what happened in the 2016 election because it is over.

[7]    Plaintiff's attorney represented to this Court that such allegations would be supported by affidavits. *See* ECF 19 at 3-4.  They were not and, as noted, we were unable to find anything definitive through a Google search.

provision regulating who may sign the affidavit of circulator for a candidate seeking access Pennsylvania November general election ballot, Plaintiff factually alleges that he wants to use the same professional circulators as he did in 2016. Plaintiff has not alleged that he has such a contract with these professional circulators or that the professional circulators he used last year will be ready, willing and able to provide such assistance three years from now.  Once again, Plaintiff tries to invalidate long-standing provisions based on nothing more than speculation of what may happen in the future.

And, as for the disaffiliation challenge, Pennsylvania law merely requires a person who wishes to run for office as an independent candidate to disaffiliate with the Democratic Party or Republican Party 30 days before the primary election.  In other words, Plaintiff has nearly three years to decide whether to remain a member of the Democratic Party or to disaffiliate from this party to run as a political body candidate.[8]

Since the next opportunity for Plaintiff to run for President is three years away, and since several contingencies must fall into place before he can do so, the constitutional challenges presented in the Second Amended Complaint are not ripe. *See Wyatt, Virgin Islands, Inc. v. Government of the Virgin Islands*, 385 F.3d 801,

---

[8]    Again, referencing Plaintiff's Wikipedia page, Plaintiff notes that he has been a candidate of other independent parties; thus, changing political party does not seem to be an issue.  *See* https://en.wikipedia.org/wiki/Rocky_De_La_Fuente (last visited May 31, 2017).

806-07 (3d Cir. 2004) (rejecting claim on ripeness grounds and reasoning that a "dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotations omitted but quoting *Doe v. County of Centre, PA*, 242 F.3d 437, 453 (3d Cir. 2001), which in turn quotes *Texas v. U.S.*, 523 U.S. 296, 300 (1998)). "Claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention." *Id*. at 806 (further citations and quotations omitted). *See also Constitution Party of Pa. v. Cortés*, 712 F. Supp. 2d 387 (E.D. Pa. 2010) (dismissing challenges to election code because claims were not ripe).

### 2. Plaintiff Lacks Standing To Bring His Constitutional Challenges

In order to establish standing, Plaintiff first must "have suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical.'" *Toll Bros., Inc.,* 555 F.3d at 137; *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (the Supreme Court has, "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him"). Second, that injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* "Third, the plaintiff must establish that a favorable decision likely would redress the injury." *Id.*

16

As a threshold matter, and as with our ripeness arguments, it is clear that Plaintiff has not actually been harmed and that any future harm is neither actual nor imminent but, instead, is conjectural and hypothetical.  For this reason alone, Plaintiff lacks standing to challenge these provisions of Pennsylvania's Election Code.  *See Pa. Prison Soc. v. Cortés*, 508 F.3d 156, 166 (3d Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)) ("[s]uch 'some day' intentions— without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require [and in] such circumstances we have insisted that the injury proceed with a high degree of immediacy so as to reduce the possibility of deciding a case in which no injury would have occurred at all").

Moreover, Plaintiff made the Pennsylvania Democratic primary ballot in 2016 and alleges that he wants to use the same professional circulators for his collection efforts in 2020.  Plaintiff concedes that it was not an inability to gather sufficient signatures that kept him off of the November general election ballot. Moreover, while Plaintiff references persons who he believes wanted to collect for him in 2016 but did not, Plaintiff avers that he wants to use the same collectors who did collect for him.  In short, Plaintiff has not alleged how these provisions

will keep him off of the ballot and history demonstrates that the challenged provisions present no obstacle to his ballot access.[9]

Beyond this, and as it specifically relates to the challenge to who may sign the affidavit of circulator for those seeking ballot access to the general election ballot, Attorney Rossi successfully challenged the provision before. In *Green Party v. Aichele*, 89 F. Supp. 3d 723 (E.D. Pa. 2015), Judge Dalzell invalidated a provision that prevented out-of-state persons from signing the affidavit of circulator for nomination papers. *See* 89 F. Supp. 3d at 742. The Commonwealth did not appeal this decision.[10] Indeed, in subsequent elections, Defendants have accepted nomination papers signed by out-of-state circulators. By definition, an out-of-state person is not a Pennsylvania registered voter and, thus, we are at a loss to understand the basis for Plaintiff's challenge to Section 2911(e)(6) and Section 2911.1. In short, Plaintiff lacks standing to challenge these provisions because there is no case or controversy between Plaintiff and Defendants on this score.

In sum, Plaintiff has failed to allege any injury-in-fact (nor has he, therefore, satisfied the other two elements necessary for standing) and, therefore, he is not

---

[9] The provisions challenged do not impede any person from advocating on behalf of any candidate and, as such, there is no First Amendment issue.

[10] Judge Dalzell granted the Commonwealth's motion for summary judgment as to Plaintiffs' facial challenges and reasoned that "[w]e will not speculate that there is no set of circumstances under which the challenged provision may withstand constitutional scrutiny." 89 F. Supp. 3d at 743. Plaintiffs appealed their losses to the Third Circuit; however, the appeal was dismissed because Plaintiffs failed to timely prosecute their appeal.

entitled to the equitable relief requested.  Thus, a declaration regarding his claims would amount to nothing more than an improper advisory opinion.  *See*, *e.g.*, *Constitution Party of Pa.*, 712 F. Supp. at 397-98 (courts are without power to give advisory opinions), *aff'd*, 433 Fed. App'x 89 (3d Cir. 2011).  Therefore, Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(1).[11]

## D.       Plaintiff's "Sore Loser" Challenge Is Barred By *Res Judicata*

Despite Plaintiff's initial attempt to bypass state court review of his challenge to the Pennsylvania Election Code, his claims regarding the "sore loser" provision eventually landed before the proper tribunal—the Commonwealth Court of Pennsylvania.  The Commonwealth Court rejected Plaintiff's claims in their entirety, and denied his requested relief.  Plaintiff did not raise constitutional claims, although there was nothing preventing him from doing so.  He now takes the opportunity to raise these issues, which is improper for the reasons that follow.

The Supreme Court has opined that "disposition of the federal action, once the state-court adjudication is complete, [is] governed by preclusion law.  The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State

---

[11]      Plaintiff does not have standing simply because he alleges facial constitutional challenges.  There is no jurisprudence "support[ing] a general proposition that facial challenges to the validity of a statute need not satisfy the Article III requirements for standing."  *Pa. Prison Soc.,* 508 F.3d at 169.

would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282 (2005) (citations and internal quotation marks omitted). The Pennsylvania Supreme Court has explained that *res judicata* "bars a later action" that was "the subject of the first action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). Notably, a "final valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." *Id*. And *res judicata* "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id*.

Here, there is no dispute that the two actions at issue here share identical parties in the same capacities. Likewise, there is no dispute that Commonwealth Court was a court of competent jurisdiction and rendered a final decision in that litigation. Plaintiff's Commonwealth Court complaint contains the same facts, relating to his efforts to get in the 2016 general election ballot, and references the same documents and laws, as those raised here. There is no discernable difference between the acts, and the laws, complained of in the Commonwealth Court action and those disputed herein.

The causes of action are the same for purposes of *res judicata*. It is axiomatic that *res judicata* applies "not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part

of the same cause of action." *Balent, supra*.  Here, there was no jurisdictional

obstacle that would have prevented Plaintiff from raising his asserted federal

claims in state court.  *See Colonial Park Care Ctr., LLC v. Dallas*, 2016 WL

4765966, at *5 (M.D. Pa. Sept. 13, 2016) ("[Plaintiff] cannot now raise claims in

federal court when it had the opportunity to do so in the Commonwealth Court"

and concluding that Plaintiff's "claims are barred by the doctrine of *res judicata*")

(Exhibit A); *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549

(3d Cir. 2006) (opining that "Pennsylvania courts have held that the mere

advancement of a different legal theory does not necessarily give rise to a different

cause of action," in dismissing plaintiff's Housing Act claim that could have been

raised in a state court challenge).  Because nothing prevented Plaintiff from raising

his federal claims in Commonwealth Court, he should not be permitted to raise

them now.  Therefore, Plaintiff's challenges to the "sore loser" provision are

barred by *res judicata*.

### E.    Pennsylvania's "Sore Loser" Provision And Disaffiliation Provision Are Constitutional

Substantively, Plaintiff's constitutional challenges to the statutory provisions

at issue fail.  Section 2911(e)(5), the "sore loser" law, and Sections 2911(e)(6) and

2911.1, together known as the "disaffiliation" law, are long-standing principles of

election law generally, and are well-established tenets of the Pennsylvania Election

Code.   Corollaries of these provisions exist throughout the country, having

withstood both the test of time, and challenges to their constitutional muster.  The sore loser law and the disaffiliation law at issue in this case are similarly constitutional.

Turning first to the disaffiliation law at issue (Sections 2911(e)(6) and 2911.1), the United States Supreme Court has definitively held that such laws are constitutional exercises of a state's authority to structure elections.  In the well-established precedent of *Storer v. Brown*, 415 U.S. 724, 728 (1974), the Supreme Court upheld a one year disaffiliation provision, in the face of almost identical First Amendment, Fourteenth Amendment, and Qualifications Clause challenges. The Court ruled that the provision, forbidding a ballot position to an independent candidate for elective public office who had registered affiliation with qualified political party within one year prior to immediately preceding primary election was constitutional, since the statute involved no discrimination against independents and protected the compelling state interest of furthering stability of political system by guarding against splintered parties and unrestrained factionalism.  *Id.*  The *Storer* precedent, and its progeny, squarely applies to the provision in this case, which only requires disaffiliation thirty (30) days before the primary, as compared to the one year prohibition upheld by the Supreme Court.  *See Storer, supra*; *accord Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003) (upholding one year disaffiliation law as constitutional).

22

Furthermore, analogous "sore loser" laws have been upheld in the face of similar challenges. *See Libertarian Party of Michigan v. Johnson*, 905 F. Supp. 2d 751, 766 (E.D. Mich. 2012), *aff'd,* 714 F.3d 929 (6th Cir. 2013) (concluding "that the Michigan sore loser statute, which is directed expressly at preventing last minute political party maneuvering, is a reasonable, nondiscriminatory restriction justified by Michigan's important regulatory interests of preventing extended intra party feuding, factionalism and voter confusion"). And, while the states may not establish additional qualifications for federal office, *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 828-34 (1995), courts examining sore loser laws and other similar provisions have found them to be the permissible types of procedural rules permitted under *Term Limits*.

In fact, no court has ever determined that "sore loser" provisions are unenforceable against presidential or other federal office-seekers and the overwhelming weight of authority is against Plaintiff on that score. *See Cartwright v. Barnes*, 304 F.3d 1138, 1142-43 (11th Cir. 2002) (upholding ballot access rules against a *Term Limits*-based challenge); *Libertarian Party of Ill. v. Rednour*, 108 F.3d 768, 777 (7th Cir. 1997) (same); *Springer v. Balough*, 96 F. Supp. 2d 1250, 1257 (N.D. Okla.), *aff'd,* 232 F.3d 902 (10th Cir. 2000) ("[r]equirements that are procedural in nature, such as reasonable ballot access requirements, do not violate a constitutional provision describing the qualification for holding office"); *Nat'l*

23

*Comm. of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71, 73–74 (W.D. Tex. 1996) (upholding Texas "sore loser" rule for presidential candidate Pat Buchanan).[12]  This Court should adopt the position taken by the other courts addressing this issue, and dismiss Plaintiff's Second Amended Complaint.

**F.  This Court Should Not Decide Plaintiff's Substantive Challenges To The Provisions Governing Who May Sign The Affidavit Of Circulator For Candidates Seeking Access To The Pennsylvania Democratic Primary Ballot**

In Pennsylvania, the Election Code governs who is legally allowed to sign affidavits of circulation.  For nomination petitions—the forms that a candidate seeking access to Pennsylvania's primary ballot must collect signatures on—the person signing the affidavit of circulator must be a Pennsylvania qualified elector who is registered to vote and who is enrolled as a member of the same political party in the Commonwealth as the person form whom she is signing.  25 P.S. § 2869.[13]

---

[12]  Put another way, and as it relates to the Qualification Clause challenges, under Plaintiff's logic, any ballot-access requirement—even one requiring 2,000 signatures to get on the Democratic primary ballot—would constitute an additional "qualification" for the office.  This clearly is not the law.

[13]  According to Plaintiff, the affidavit of circulator for nomination papers—the forms used to collect signatures for those seeking access to the Pennsylvania general election ballot—must be a Pennsylvania qualified elector who is also registered to vote.  25 P.S. § 2911(d).  As discussed above, Judge Dalzell concluded that, for the plaintiffs in the *Green Party* case, the requirement that the signors of the affidavits of circulation be Pennsylvania residents violated the U.S. Constitution.  Defendants did not appeal this decision and have accepted nomination papers since that decision where the affidavits were signed by out-of-

These provisions have been recently challenged.  To that end, Plaintiff's attorney, back in January of 2016, challenged, on behalf of other would-be out-of-state circulators, 25 P.S. § 2869's provision relating to who may sign the affidavit of circulator on nomination petitions.  *See Benezet, et al. v. Cortés, et al.*, No. 1:16-cv-0074.  The parties engaged in significant discovery in that litigation and a full record has been built.  Based on this fully developed record, the parties in that case each filed for summary judgment on the specific question of whether this provision facially, or as applied, passes constitutional muster.  While Judge Kane's decision will not be binding on this Court, given the factual record developed and given the arguments pressed, it likely will provide persuasive analysis one way or the other.  Accordingly, Defendants suggest that this Court stay any further litigation on this issue until a final decision is rendered in *Benezet*.  Since the next presidential election is not until 2020, we see no prejudice to Plaintiff.

## G.    Plaintiff's Substantive Challenges To The Provisions Governing Who May Sign The Affidavit Of Circulator For Candidates Seeking Access To The Pennsylvania Democratic Primary Ballot Is Without Merit

Finally, it is "too plain for argument" that the Commonwealth "may require parties to use the primary format for selecting their nominees." *Jones*, 530 U.S. at 572 (citing *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974)).  To prevent

---

state persons.  If one need not be a Pennsylvania resident, one need not be registered to vote in Pennsylvania.  Thus, Plaintiffs lack standing to challenge this provision as there is no dispute between Plaintiff and Defendants relating to this provision.

burdening ballots with frivolous candidacies, Pennsylvania also "may require parties to demonstrate 'a significant modicum of support' before allowing their candidates a place on that ballot." *Id* at 572 (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).  To avoid party raiding—a process by which dedicated members of one party formally switch to another party to alter the outcome of that party's primary—Pennsylvania also can have closed primaries and impose restrictions on participation in the primary process.  *Id* at 572 (citing *Rosario v. Rockefeller*, 410 U.S. 752 (1973).  Indeed, the Supreme Court has repeatedly recognized that a state may constitutionally have laws that promote the two-party system.  *See Timmons*, 520 U.S. at 366-67 ("[t]he Constitution permits the Minnesota Legislature to decide that political stability is best served through a healthy two-party system").

Beyond the fact that closed primaries are constitutionally sound, they further First Amendment rights—speech and associational—of "citizens to band together in promoting among the electorate candidates who espouse their political views." *Jones*, 530 U.S. at 573; *see also id*. at 573 ("[t]he formation of national political parties was almost concurrent with the formation of the Republic itself").  "Consistent with this tradition … the First Amendment protects 'the freedom to join together in furtherance of common political beliefs,' *Tashjian*, *supra*, at 214-15, which 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.'"

26

*Jones*, 530 U.S. at 574 (quoting also *Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 122 (1981).   Indeed, a necessary corollary of the "right to associate is the right not to associate" because "[f]reedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Id* at 574.

With these tenets in mind, Defendants note that the Second Circuit has soundly rejected a similar challenge.   In *Maslow v. Board of Elections in the City of New York*, 658 F.3d 291 (2d Cir. 2011), the challengers included prospective political candidates, petition circulators, and voters. *Id*. at 294.   These plaintiffs challenged New York's law that required those circulating the designating petition for the candidate to be either a notary public, a commissioner of deeds, or an enrolled voter of the same political party as the voters qualified to sign the petition. *Id*. at 294.   As here, the plaintiffs in *Maslow* argued that the restriction unconstitutionally hindered their right to association and interactive political speech. *Id*. at 296, 298.

In flatly rejecting the plaintiffs' challenge, the Second Circuit concluded that the challenged provision "imposes little or no burden on Plaintiffs' First Amendment rights" because the constitutional right to speech and association that was being advanced—to have non-party members participate in party primary

27

elections—simply does not exist.  *Id*. at 296.  Balanced against this non-existent right was the right of a political party—guaranteed by the First Amendment—to govern its own affairs.  *Id*. at 296 (citing *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202-03 (2008); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574-75 (2000); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997); *Eu v. S.F. Cnty. Democratic Cen. Comm.*, 489 U.S. 214, 224 (1989); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 n.6 (1986); *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981)).

Put another way, the "First Amendment affords political parties an autonomy that encompasses the right to exclude non-members from party functions, and '[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee.'"  *Id*. at 296 (quoting *Jones*, 530 U.S. at 575).  Because of this, a "political party's associational right to exclude forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs."  *Id*. at 296 (further citations omitted).  This is because the "associational interest in selecting the candidate of a group to which one does not belong … falls far short of a constitutional right, if indeed it can even be fairly characterized as an interest."  *Id*. at 296.  And, since there was no non-trivial burden to the plaintiffs' First Amendment rights, the Second Circuit passingly concluded that New York's legitimate interest in

28

protecting its political parties from party raiding was aided by the rule and, thus, the rule was upheld.  *Id*. at 298 (the rule "helps combat party raiding by denying hostile non-party elements access to one part of a political party's nomination process").

So, too, here.  Pennsylvania Republicans and Pennsylvania Democrats—and their respective state parties—have First Amendment associational and speech rights in selecting those who will be on the Pennsylvania Democratic Party primary ballot or the Pennsylvania Republican Party primary ballot for President of the United States.  People who are neither registered voters nor enrolled in the requisite party simply have no First Amendment speech or associational right to inject themselves into the appropriately partisan selection process in the Commonwealth.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court grant their Motion to Dismiss, and dismiss the Second Amended Complaint, with prejudice.

**Respectfully submitted,**

**JOSH SHAPIRO**
**Attorney General**

**By:**   *s/Kenneth L. Joel*
        **KENNETH L. JOEL**
        **Chief Deputy Attorney General**
        **Attorney ID 72370**

**Office of Attorney General**
**15ᵗʰ Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 787-8106**
**Fax:    (717) 772-4526**
**nradziewicz@attorneygeneral.gov**

        **KELI M. NEARY**
        **Senior Deputy Attorney General**
        **Attorney ID 205178**

        **NICOLE J. RADZIEWICZ**
        **Deputy Attorney General**
        **Attorney ID 314061**

        **KENNETH L. JOEL**
        **Chief Deputy Attorney General**
        **Litigation Section, Civil Law Division**

**DATE: June 8, 2017**        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Kenneth L. Joel, Chief Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on June 8, 2017, I caused to be served a true and correct copy of the foregoing Brief in Support of Defendants' Motion to Dismiss via the United States District Court for the Middle District of Pennsylvania's Electronic Filing System to:

> Paul A. Rossi, Esquire
> IMPG Advocates, Inc.
> 873 East Baltimore Pike, Suite #705
> Kennett Square, PA 19348
> Email: Paul-Rossi@comcast.net
> *Counsel for Plaintiff*

*/s/ Kenneth L. Joel*
**KENNETH L. JOEL**
**Chief Deputy Attorney General**
