## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROQUE "ROCKY" DE LA FUENTE, | : | |
| | : | 1:16-cv-01696 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| PEDRO A. CORTÉS, in his official | : | |
| capacity as the Secretary of the | : | |
| Commonwealth of Pennsylvania; and | : | |
| JONATHAN MARKS, in his official | : | |
| capacity as Commissioner of the | : | |
| Bureau of Commissions, Elections and | : | |
| Legislation, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### August 21, 2017

Plaintiff Roque "Rocky" De La Fuente ("Plaintiff") brings this action

against Defendants Pedro A. Cortés and Jonathan Marks ("Defendants"), in their

official capacities as Secretary of the Commonwealth of Pennsylvania and

Commissioner of the Bureau of Commissions, Elections, and Legislation,

respectively. Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, alleging 12

counts of violations of his constitutional rights under the First and Fourteenth

Amendments, as well as the Qualifications Clause of Article II, Section I of the

United States Constitution. Presently pending before the Court is Defendants'

Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 34). For the reasons that follow, this Motion shall be granted.

## I.    PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint on August 15, 2016, followed by an Amended Complaint on August 18, 2016. (Docs. 1, 4). Defendants initially filed a Motion to Dismiss for Failure to State a Claim on August 25, 2016. (Doc. 10). However, we stayed the case by Order dated September 14, 2016, (Doc. 15), pending resolution of unsettled state law in state court. Following a decision by the Commonwealth Court of Pennsylvania, we issued an Order lifting the stay on November 15, 2016. (Doc. 18). Defendants subsequently filed another Motion to Dismiss for Failure to State a Claim on December 1, 2016. (Doc. 21). Plaintiff filed a Motion for Leave to File a Second Amended Complaint on January 9, 2017, (Doc. 25), which we granted by Memorandum and Order on April 24, 2017. (Doc. 32). Plaintiff filed a Second Amended Complaint on May 14, 2017. (Doc. 33). Defendants subsequently filed the present Motion to Dismiss on May 26, 2017. (Doc. 34). Defendants filed their supporting brief on June 8, 2017, (Doc. 37), Plaintiff filed his opposition brief on June 22, 2017, (Doc. 40), and Defendants filed their reply brief on June 30, 2017. (Doc. 41).

Having been fully briefed, the matter is ripe for review.

## II.    FACTUAL BACKGROUND

In his Second Amended Complaint, Plaintiff has set forth the facts of this case as follows. Plaintiff was a candidate in the 2016 election for President of the United States. (Doc. 33, ¶ 20). He sought the Democratic nomination during the primaries and subsequently entered the general election as an independent candidate. (*Id.* at ¶¶ 20, 22). In Pennsylvania, Plaintiff was on the primary ballot seeking the Democratic nomination. (*Id.* at ¶ 23). Plaintiff ultimately was unsuccessful in his bid to receive the Democratic nomination. Following the primary election in Pennsylvania, Plaintiff submitted to Defendants nomination papers to appear as an independent candidate in the general election. (*Id.* at ¶ 24). Because Plaintiff previously had been a candidate for the Democratic nomination, Defendants rejected Plaintiff's nomination papers pursuant to 25 P.S. § 2911(e)(5). (*Id.* at ¶ 25). Plaintiff has announced that he intends to run in the 2020 presidential election either as a Democratic nominee or as an independent. (*Id.* at ¶¶ 29, 30).

During the 2016 campaign, registered Republicans were prevented from circulating Plaintiff's nomination petitions pursuant to 25 P.S. § 2869(a). (*Id.* at ¶ 50). In addition, unregistered qualified electors were prohibited from circulating nomination petitions for Plaintiff pursuant to 25 P.S. §§ 2869(a) and 2911(d). (*Id.* at ¶ 51). Plaintiff intends to hire the same professional circulators in 2020 that he used in 2016. (*Id.* at ¶ 52).

## III.   STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's Complaint for both lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.

Under Rule 12(b)(1), Defendants argue that Plaintiff's claims are not ripe and moot, that Plaintiff lacks standing, and that Plaintiff's federal claim against § 2911(e)(5) is barred by the doctrine of *res judicata*. A Rule 12(b)(1) challenge comes in two fundamental forms: facial or factual attacks. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)). A factual challenge, by contrast, "attacks the factual allegations underlying the complaint's assertion of jurisdiction." *Davis*, 824 F.3d at 346. In a factual challenge, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' … '[N]o presumptive truthfulness attaches to [the] plaintiff's allegations.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In the instant case, Defendants have not challenged the factual allegations of Plaintiff's Complaint, but have argued that, even if those

facts are true, Plaintiff has not sufficiently pled jurisdiction. Thus, we conclude that Defendants have raised a facial challenge and will proceed with the same standard of review as a 12(b)(6) motion.

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint,…and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by

Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

Plaintiff alleges that 25 P.S. § 2911(e)(5) (Counts I and IV), § 2911(e)(6) (Counts II and V), and § 2911.1 (Counts III and VI) violate the First and Fourteenth Amendments and the Qualifications Clause in Article II, Section I of the United States Constitution. Plaintiff also alleges that 25 P.S. § 2869(a) (Counts VII, VIII, IX, and X) and § 2911(d) (Counts XI and XII) violate the First and Fourteenth Amendments both facially and as applied. Defendants have moved to dismiss Plaintiff's Complaint on several grounds: (1) Plaintiff's claims are moot and not ripe, (2) Plaintiff lacks standing, (3) *res judicata* bars any claim against § 2911(e)(5), and (4) each of the challenged laws is constitutional under controlling case law.

We begin with Defendants' jurisdictional arguments that Plaintiff's claims are moot and not ripe, that Plaintiff lacks standing, and that *res judicata* acts as a bar to the § 2911(e)(5) challenge.

1.      **Rule 12(b)(1) – Lack of Jurisdiction**

A.      **Claims Not Ripe and Moot**

Defendants argue that any claims arising out of the 2016 election are moot because the election is over and any claims related to the 2020 election are hypothetical and, therefore, not ripe. The doctrine of ripeness requires that a conflict "'have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" *Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952)). "A dispute is not ripe for judicial determination 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wyatt*, 385 F.3d at 806 (quoting *Doe v. Cnty. of Centre, PA*, 242 F.3d 437, 453 (3d Cir. 2001)).

Defendants characterize Plaintiff's anticipated obstacles in the 2020 election as hypothetical. However, binding election law in Pennsylvania blocked Plaintiff's efforts to continue his campaign in 2016, and those laws would have a similar effect on Plaintiff's intended 2020 campaign. Plaintiff's claims, therefore, are not purely hypothetical but are grounded in factual occurrences that are susceptible to repetition. Likewise, the termination of the 2016 election does not necessarily render Plaintiff's claims moot. Cases in which apparently moot claims are likely to

arise again have long been gathered under the "capable of repetition yet evading review" exception to the mootness doctrine. This exception readily applies to most election cases. *Merle v. U.S.*, 351 F.3d 92, 94 (3d Cir. 2003). Under this exception, "a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* at 95 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

In the present case, Plaintiff's grievances arise when Pennsylvania's election laws impede his campaign efforts, which is most likely to occur mere months before the election cycle ends. Plaintiff could not fully litigate his claim in a matter of months and, therefore, will always bump against a jurisdictional bar. Plaintiff has expressed his intent to run in the 2020 election, where he is likely to face the same obstacles and raise the same claims again. Defendants express skepticism that Plaintiff intends to enter the 2020 presidential election, noting the scarcity of media coverage found during a Google search. However, we do not require substantial evidence of Plaintiff's intent to determine that he is likely to run in 2020. In *Merle*, the Third Circuit was not dissuaded where plaintiff failed to allege an intent to run for office again. Instead, the Court found it "reasonable to expect that Merle will wish to run for election" at the next opportunity, or even at some

9

future date. *Id.* We find, therefore, that Plaintiff's claims fall within the "capable of repetition yet evading review" exception to the mootness doctrine and are ripe for adjudication.

## B.   Lack of Standing

Defendants further argue that Plaintiff lacks standing to bring this case. To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury must be "'concrete, particularized, and actual or imminent.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 134 S.Ct. at 2341. The Supreme Court has further held that "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 2342 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiff intends to engage in the political process. It is beyond question that participation in politics is affected with constitutional interests. Furthermore, Pennsylvania's Election Code proscribes Plaintiff's conduct, and there is a credible threat that Plaintiff's conduct in 2020 will be blocked as it was in 2016. Plaintiff has alleged that he was prevented from appearing on the general election ballot, was faced with a diminished pool of potential circulators, and expended a significant sum of money to run in the general election to no avail. In 2020, Plaintiff faces a credible threat of identical injury. With respect to the remaining two elements of standing, we find that the only reasons for Plaintiff's abbreviated campaign were the statutory provisions challenged here. Consequently, a favorable decision in this matter is likely to redress Plaintiff's injury. Thus, we find that Plaintiff has pled sufficient facts to establish Article III standing.

### C.    *Res Judicata*

Defendants' final jurisdictional argument is that Plaintiff's claim against § 2911(e)(5) is barred by the doctrine of *res judicata*. *Res judicata* "is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." *Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985). "When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, 'he may not later renew the litigation in another court.'" *Id.* at

690 (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946)). *Res judicata*, however, is "a rule of 'fundamental and substantial justice, of public policy and private peace' rather than a technical rule." *Id.* (quoting *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917)). In cases such as the instant matter, where the Court has ordered a *Pullman* abstention,[1] any party may explicitly reserve federal questions for litigation in federal court, pending the resolution of related state law questions in state court. *See Instructional Sys. Inc. v. Computer Curriculum Corp.*, 35 F.3d 813, 822 (1994) (stating that "traditional rules of *res judicata* and collateral estoppel … do not apply to state proceedings that follow *Pullman* abstention and an *England* reservation.").[2]

By making an *England* reservation, parties with federal questions who are forced to litigate those federal claims in state court after a *Pullman* abstention maintain the right to return to the federal courts and litigate the federal matters. The case at bar presents a similar, albeit inexact, situation. This Court did abstain

---

[1] *R.R. Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941).

[2] An *England* reservation refers to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964). In *England*, the Supreme Court reviewed a case in which plaintiffs sued in federal court, litigated all claims (including federal claims) in state court after a *Pullman* abstention, and then tried to re-litigate the federal claims in federal court. *England*, 375 U.S. at 412-15. The Court recognized that plaintiffs will frequently include (even be required to include) federal claims in state court proceedings to provide the proper context for considering the state law questions, pursuant to the Court's decision in *Government & Civic Employees Organizing Committee, C.I.O. v. Windsor*, 353 U.S. 364 (1957). Concerned that including federal claims in the state litigation would preclude later resolution of those claims in federal court, the Court held that a plaintiff forced into state court by way of abstention may "inform the state courts that he is exposing his federal claims there only for the purpose of complying with *Windsor* and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions." *England*, 375 U.S. at 421.

pursuant to *Pullman* by our Order dated September 14, 2016. (Doc. 15). In the briefs leading up to our abstention order, Plaintiff explicitly requested the right to return to the District Court and litigate his federal claims, which we granted. During the state proceeding,[3] Plaintiff did not litigate the federal claims, nor did the Commonwealth Court require him to do so. Defendants now claim that Plaintiff's failure to litigate the federal claim against § 2911(e)(5) before the Commonwealth Court precludes his ability to litigate the claim here. We disagree.

The doctrine of *res judicata* prevents litigants from having a "second bite at the apple." The Supreme Court, however, has expressed its concern with litigants who are forced into state court by a *Pullman* abstention and then subsequently lose their opportunity to be heard in federal court. The allowance for an *England* reservation provides a way around that dilemma. Admittedly, Plaintiff did not precisely assert an *England* reservation, but such a reservation was unnecessary because the Commonwealth Court did not require Plaintiff to litigate his federal claims. Rather, Plaintiff expressly asked this Court to maintain jurisdiction over the federal claims, to which we agreed. To suddenly reverse ourselves and bar Plaintiff's federal claims would be against good public policy and fundamental justice. We therefore find that Plaintiff's federal claims are not barred by *res judicata*.

---

[3] *De La Fuente v. Cortes and Marks*, No. 518 M.D. 2016 (Pa. Commw. Ct. Oct. 11, 2016)

Having satisfied ourselves as to our jurisdiction, we will address

Defendants' assertions of the constitutionality of the statutes.

## 2.      Rule 12(b)(6) – Constitutionality of Challenged Provisions

### A.      "Sore Loser" and Disaffiliation Provisions

Defendants argue that Plaintiff's claims against §§ 2911(e)(5), 2911(e)(6),

and 2911.1 fail because controlling precedent has already declared similar

provisions constitutionally valid. Plaintiff has argued that the provisions should not

apply to presidential elections.

Section 2911(e)(5), known as the "sore loser" provision, provides:

> There shall be appended to each nomination paper
> offered for filing an affidavit of each candidate
> nominated therein, stating…(5) that his name has not
> been presented as a candidate by nomination petitions for
> any public office to be voted for at the ensuing primary
> election, nor has he been nominated by any other
> nomination papers filed for any such office.

25 P.S. § 2911(e)(5). Sections 2911(e)(6) and 2911.1 bear similar language to one

another. Together they are understood as the "disaffiliation" provisions. Section

2911(e)(6) requires the nomination paper affidavit to state "that in the case where

he is a candidate for election at a general or municipal election, he was not a

registered and enrolled member of a party thirty (30) days before the primary held

prior to the general or municipal election in that same year." 25 P.S. § 2911(e)(6).

Similarly, Section 2911.1 provides:

> Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year shall be ineligible to be the candidate of a political body in a general or municipal election held in that same year nor shall any person who is a registered and enrolled member of a party be eligible to be the candidate of a political body for a special election.

25 P.S. § 2911.1.

The Supreme Court has made clear that "[c]onstitutional challenges to specific provisions of a State's election laws … cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Instead, a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789.

The Supreme Court has engaged in this balancing process on several occasions. In *Storer*, the Court addressed a challenge to disaffiliation and "sore

loser" provisions in California's election code. California required independent candidates for public office to disaffiliate with a political party within one year prior to a primary election. *Storer*, 415 U.S. at 726. Additionally, California prohibited candidates who had been defeated in a party primary from subsequent nomination as an independent or as a candidate of another party. *Id.* at 733. Analyzing the disaffiliation provision, the Court found that the provision expressed "a general state policy aimed at maintaining the integrity of the various routes to the ballot." *Id.* The Court pointed out that the provision did not discriminate against independents because party candidates were also required to disaffiliate with other parties in the same manner. *Id.* The provision, the Court opined, "protect[ed] the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot." *Id.* at 735. "It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system." *Id.* at 736.

Similarly, the Court reasoned that the "sore loser" provision furthered the aim of preventing "continuing intraparty feuds." *Id.* at 735. "The State's general policy is to have contending forces within the party employ the primary campaign and primary election to finally settle their differences. The general election ballot is reserved for major struggles." *Id.* California's "sore loser" provision "effectuate[d]

this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified." *Id.*

Plaintiff argues that *Storer* was decided only with regard to candidates for Congress and should not apply to presidential candidates. Plaintiff cites two later Supreme Court cases as support: *Anderson* and *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). The facts of *Anderson*, while relating specifically to a presidential candidate, are not on point. John Anderson had announced his candidacy for the presidency in April 1980, when it was already too late to secure a position on the ballot in Ohio. *Anderson*, 460 U.S. at 782. Ohio's election laws required independent candidates to submit their nominating papers by March the year of an election. *Id.* at 786. The Court noted that the early filing deadline for independents put them at a disadvantage compared to major-party candidates. *Id.* at 790. While independent candidates were barred from entering the field at any time after mid-to-late March, major-party nominations at that time would only be beginning "and the major parties [would] not [be adopting] their nominees and platforms for another five months. Candidates and supporters within the major parties thus have the political advantage of continued flexibility; for independents, the inflexibility imposed by the March filing deadline is a correlative disadvantage because of the competitive nature of the electoral process." *Id.* at 791.

*U.S. Term Limits* factually is even farther from the present matter. There, the Supreme Court heard a challenge to Arkansas election law that imposed term limits on candidates for the U.S. House of Representatives and Senate. *U.S. Term Limits*, 514 U.S. at 783. Thus, rather than presenting a timing issue for filing nomination papers or disaffiliating from a party, the provisions in *U.S. Term Limits* placed an outright ban on candidates who had already served three terms in the House or two terms in the Senate. The Court held the Arkansas provision unconstitutional as a violation of Qualifications Clause of the United States Constitution. *Id.* at 829.

The instant matter presents facts nearly identical to those in *Storer*, except that the California provision in *Storer* imposed an earlier deadline for disaffiliation than the provision before us (one year in *Storer* versus 30 days here). Although the Supreme Court did not create a "bright line" rule for when a provision is valid or invalid, the circumstances of the present matter align at nearly every point with the *Storer* decision. Therefore, we find that the *Storer* decision applies to the present matter and controls our outcome. The disaffiliation deadline is substantially shorter here than the deadline that was upheld in *Storer*, and we see no reasonable justification for permitting Plaintiff's claim to continue. Accordingly, we find that *Storer* controls the present dispute, and the provisions being challenged by Plaintiff

are constitutional as a matter of law. Therefore, we shall dismiss Plaintiff's claims against §§ 2911(e)(5), 2911(e)(6), and 2911.1.

## B.    Restrictions on Petition Circulators

Finally, Defendants argue that Plaintiff has no cognizable claim against §§ 2869(a) and 2911(d). Both provisions of the election code place limitations on who may circulate nominating petitions. Section 2869(a) provides that each circulator of a nominating petition must include an affidavit "that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be, referred to in said petition…" 25 P.S. § 2869(a). Similarly, § 2911(d) states: "Nomination papers … shall have appended thereto the affidavit of some person … setting forth (1) that the affiant is a qualified elector of the State, or of the electoral district, as the case may be, referred to in the nomination paper…" 25 P.S. § 2911(d). Plaintiff argues that these provisions violate the free speech rights of unregistered, but qualified, electors who want to circulate nominating petitions, as well as registered electors of a different party than the one identified on the petition. Defendants, in turn, argue that only those electors registered to a party have a First Amendment right to participate in nominating that party's candidates because political parties have a right to define their associational boundaries.

The First Amendment protects "'the freedom to join together in furtherance of common political beliefs.'" *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214-15 (1986)). This "'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.'" *Id.* (quoting *Democratic Party of U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 122 (1981)). "[A] corollary of the right to associate is the right not to associate." *Id.* Furthermore, "In no area is the political association's right to exclude more important than in the process of selecting its nominee." *Id.* at 575.

Plaintiff points out that the First Amendment also protects circulating petitions, which has been held to be "'core political speech' because it involves 'interactive communication concerning political change.'" *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)). Plaintiff argues that the Supreme Court's decision in *Buckley* invalidates registration requirements for circulating petitions. We find, however, that the Court's decision was more narrowly crafted.

*Buckley* concerned a requirement in Colorado that, in part, required circulators of ballot initiatives to be registered voters. *Id.* at 186. Colorado's "dominant justification" for the restriction was "policing lawbreakers among petition circulators … [and] ensur[ing] that circulators will be amenable to the

Secretary of State's subpoena power, which in these matters does not extend beyond the State's borders." *Id.* at 196. Essential to the Court's analysis was a separate requirement that circulators also submit an affidavit setting forth their residential address. *Id.* The address disclosure requirement, the Court found, accomplished the same goal as the registration requirement. *Id.* at 197. "In sum, assuming that a residence requirement would be upheld as a needful integrity-policing measure – a question we, like the Tenth Circuit, have no occasion to decide because the parties have not placed the matter of residence at issue – the added registration requirement is not warranted." *Id.*

We note two important points regarding the Court's decision in *Buckley*. First, the Court's decision is more measured and context-specific than Plaintiff argues. Second, the petitions being circulated in *Buckley* were ballot initiative petitions intended to be an alternative method of law-making, not petitions for the selection of party nominees, as in the present matter. We cannot overlook the important associational rights inherent to the nomination process. The Supreme Court has noted that "the associational 'interest' in selecting the candidate of a group to which one does not belong … falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." *Cal. Democratic Party*, 530 U.S. at 575, n. 5. The Second Circuit, reviewing a similar challenge to a substantively identical New York election law, reasoned that "Plaintiffs are only

restrained from engaging in speech that is inseparably bound up with the …
plaintiffs' association with a political party to which they do not belong. As
Plaintiffs have no right to this association, they have no right to engage in any
speech collateral to it." *Maslow v. Bd. of Elections in City of New York*, 658 F.3d
291, 298 (2d Cir. 2011).

The statutory provisions Plaintiff is challenging require registration and
affiliation with a party before circulating nominating petitions for candidates of
that party. Plaintiff's Complaint indicates that he wanted Republicans to be
permitted to circulate petitions for his nomination as the Democratic candidate. To
the extent that §§ 2869(a) and 2911(d) reflect the self-selected associational
limitations of the Republican and Democratic parties, they are constitutional.
Plaintiff has not pled any facts suggesting that Pennsylvania has interfered with the
associational wishes of either party. Instead, Plaintiff argues that any qualified
voter, registered or not, should be permitted to participate in the candidate
selection process. However, this runs counter to the well-established case law
giving political parties broad leeway in establishing their associational boundaries.
*See Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) (holding that state
statute blocking Republican party's decision to permit independent voters to vote
in Republican primaries ran counter to the party's constitutional rights of
association).

22

Therefore, and in light of the foregoing jurisprudence and established precedent, we find that Plaintiff has not pled sufficient facts to state a cause of action invalidating §§ 2869(a) or 2911(d).

## V.   CONCLUSION

For the reasons stated above, we shall grant Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. A separate order shall issue in accordance with this ruling.